UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PETER ALLEN WHARTON,<br>   Plaintiff,<br><br>  v.<br><br>DENNIS CARTER, DDS,<br>   Defendant. | )<br>)<br>)<br>)  CAUSE NO.: 3:21-CV-861-JEM<br>)<br>)<br>) |

**OPINION AND ORDER**

Peter Allen Wharton, a prisoner without a lawyer, is proceeding in this case "against Dennis Carter, DDS, in his individual capacity for compensatory and punitive damages for providing constitutionally inadequate dental care to Mr. Wharton beginning on September 17, 2021, in violation of the Fourteenth Amendment." [DE 35] at 6-7. Dr. Carter filed a motion for summary judgment [DE 97], Wharton filed a response [DE 107], and Dr. Carter filed a reply [DE 108]. Dr. Carter's motion for summary judgment is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on

1

allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

"[M]edical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*." *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). The first consideration is whether the defendant "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of plaintiff's case." *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018) (quoting *Miranda*, 900 F.3d at 352) (quotation marks omitted). Then, the Court considers "whether the challenged conduct was objectively reasonable," based on the totality of the facts and circumstances. *Id.*

The parties provide evidence showing the following facts: On August 27, 2021, Dr. Carter saw Wharton at the St. Joseph County Jail ("SJCJ") for a dental appointment. [DE 100-1] at 3; [DE 100-2] at 8, 10. Dr. Carter examined Wharton's teeth and found he had a large lesion on tooth #22 with an exposed nerve and the tooth was necrotic and not retractable. *Id.* Dr. Carter started Wharton on the antibiotic Amoxicillin and scheduled him for a tooth extraction at the next dental clinic. [DE 100-2] at 8, 15.

On September 17, 2021,[1] Dr. Carter saw Wharton for a follow-up dental appointment. [DE 100-1] at 3-4; [DE 100-2] at 9. Dr. Carter again found that tooth #22 was necrotic and not retractable. *Id.* He attempted to extract the tooth, but 1/3 of the root was not removable because it was trapped between teeth #21 and #23. *Id.* According to Wharton, Dr. Carter performed the

---

[1] Wharton's medical records indicate this appointment occurred on September 18, 2021, but Wharton asserts the appointment actually occurred on September 17. [DE 107] at 9-10. Crediting the facts in the light most favorable to Wharton, the court accepts the appointment occurred on September 17.

2

extraction with unsterilized tools and his hand slipped twice during the extraction, first stabbing Wharton in the cheek and then stabbing him under his tongue and embedding a piece of tooth under his tongue. [DE 107] at 4-6. Dr. Carter pried on Wharton's teeth hard enough that he permanently twisted one of his teeth and ripped and tore his gums, which was extremely painful. *Id.* at 7-8. Dr. Carter advised Wharton that tooth #23 would need to be removed as well, and he excavated and placed temporary fillings in teeth #20 and #21. [DE 100-1] at 3-4; [DE 100-2] at 9. Wharton asserts, and his medical records support, that he was not prescribed any pain medications during this appointment. [DE 107] at 8.

Following the September 17 appointment, Wharton submitted numerous medical requests forms requesting pain medication for his "severe pain" and asserting Dr. Carter left the root of tooth #22 in his mouth, punctured his cheek, ripped his gums, and failed to prescribe him pain medication. [DE 100-1] at 4; [DE 100-2] at 5, 41-44. Wharton asserted he was being denied pain medication at "med pass" because Dr. Carter hadn't prescribed him any pain medication. *Id.* On each occasion, medical staff responded that Wharton had been scheduled for a follow-up visit at the next dental clinic. *Id.*

On September 21, 2021, Wharton was able to see Nurse Amalia after he showed a correctional officer that his mouth was still actively bleeding and "looked like I had been chewing on glass." [DE 100-1] at 4-5; [DE 107] at 12. When Wharton showed Nurse Amalia his mouth, her "jaw dropped" and she started him on Amoxicillin and placed him on the dentists list for removal of the root of tooth #22. [DE 100-1] at 4-5; [DE 100-2] at 10, 15; [DE 107] at 12-13. On September 23, 2021, Wharton received orders for ibuprofen and aspirin. [DE 100-1] at 5; [DE 100-

3

2] at 15; [DE 107] at 13.[2] Wharton first received the pain medications on September 24, seven days after the September 17 extraction. [DE 107] at 13.

On October 1, 2021, Dr. Carter saw Wharton for another dental appointment. [DE 100-1] at 5; [DE 100-2] at 26. Dr. Carter found the extraction site for tooth #22 was infected, so he prescribed Clindamycin for the infection. *Id*.; [DE 100-2] at 16. Dr. Carter attests he extracted the remaining root of tooth #22 during this visit and scheduled Wharton for a follow-up appointment on October 22, 2021, but Wharton refused to see Dr. Carter for the follow-up appointment. [DE 100-1] at 5; [DE 100-2] at 10. Wharton, alternatively, disputes that Dr. Carter extracted the remaining root of tooth #22 on October 1 and asserts Dr. Carter never made any attempt to pull the tooth on that occasion. [DE 107] at 14. Wharton provides evidence the root of tooth #22 was still present in his mouth when he was transferred from SJCJ to a Michigan prison in February 2022, [DE 107-1] at 1, and the root was finally extracted at the Michigan prison on June 29, 2022. [DE 107-1] at 2-3.

Dr. Carter argues summary judgment is warranted in his favor because he provided constitutionally adequate medical care for Wharton's teeth. [DE 98] at 3-10. Specifically, Dr. Carter attests all the treatment he provided Wharton was reasonable, appropriate, and within the applicable standard of care. [DE 100-1] at 5-8. Moreover, he attests he is not liable for any issues Wharton had with receiving pain medication because he has "no control of the dispensing of medications at St. Joseph County Jail—that duty and responsibility falls to members of jail medical staff, of which I am not." *Id.* at 8.

---

[2] It is unclear from the medical records who prescribed these pain medications, but Wharton asserts the pain medications were prescribed by Nurse Amalia, not Dr. Carter. [DE 107] at 13. There is no indication in the medical records that Dr. Carter was involved in prescribing these medications. [DE 100-2] at 15.

In his response, Wharton argues that Dr. Carter provided constitutionally inadequate medical care for leaving the root of tooth #22 in his mouth and failing to provide pain medication following the failed extraction on September 17, 2021. [DE 107] at 7-17. Specifically, Wharton asserts he was forced to live without pain medication for seven days after Dr. Carter "ripped" and "tore" his gums during the failed extraction, which was the worst pain he experienced in his life. *Id.* at 7-8, 11-12, 14. He asserts he could not eat, drink, sleep, or talk for that seven-day period due to the severe pain he was in and cried "every day and night," but was denied pain medication because it had not been prescribed by Dr. Carter. *Id.* at 10-11. Wharton argues the pain could have been easily avoided if Dr. Carter had just followed standard practice and prescribed him pain medication, but he believes Dr. Carter was trying to "torture" him because he complained after Dr. Carter slipped and stabbed him in the mouth during the extraction. *Id.* at 8, 14-15.

Here, construing the facts in the light most favorable to Wharton, a reasonable jury could conclude Dr. Carter provided Wharton constitutionally inadequate medical care for his teeth for two reasons. First, Wharton provides evidence Dr. Carter did not prescribe him any pain medication following the tooth extraction on September 17, which caused him to live in "severe pain" for seven days. Dr. Carter attests he was not responsible for "dispensing" pain medication to Wharton because he was not a member of SJCJ's medical staff. But accepting as true that Dr. Carter was not responsible for "dispensing" pain medication to Wharton, this does not explain why he declined to *prescribe* Wharton any pain medication. It is undisputed that Wharton was in significant pain following the extraction and that Dr. Carter's failure to prescribe Wharton any pain medication prevented him from obtaining pain medication from the jail's medical staff. Dr. Carter does not give any explanation for why he declined to prescribe Wharton any pain medication, nor does he refute Wharton's assertion that it is standard practice to prescribe pain

5

medication following a tooth extraction. Based on the evidence in the record, a reasonable jury could conclude that Dr. Carter violated Wharton's Fourteenth Amendment rights by neglecting to prescribe him any pain medication following the extraction. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (unnecessarily prolonging an inmate's pain constitutes deliberate indifference); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (reversing summary judgment for defendants where plaintiff did not receive treatment for painful broken nose for one-and-a-half days); *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) ("whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours" of their injury presented question for jury).

Second, there is a disputed material fact regarding whether Dr. Carter extracted the root of tooth #22 on Oct. 1, 2021. Specifically, Dr. Carter attests he extracted the root of tooth #22 on October 1, while Wharton provides evidence that Dr. Carter did not extract the tooth on that date and the tooth was not extracted until June 29, 2022, after he had been transferred out of SJCJ. [DE 107-1] at 2-3. This dispute is material because if it is true that Dr. Carter did not extract the root of tooth #22 on October 1, Dr. Carter has not given any explanation for that decision, and it is undisputed the tooth was causing Wharton severe pain and posed a risk for infection. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."). A reasonable jury could conclude it was objectively unreasonable for Dr. Carter to leave the root of tooth #22 in Wharton's mouth for no medical reason.

Because a reasonable jury could conclude Dr. Carter violated Wharton's Fourteenth Amendment rights by (1) unnecessarily prolonging Wharton's pain by declining to prescribe him pain medication following the extraction on September 17, 2021, and (2) leaving the root of tooth

#22 in his mouth throughout the duration of his imprisonment at SJCJ for no valid medical reason, summary judgment must be denied.

Wharton also filed a letter asking for both additional time to amend his response and appointment of counsel. It is not necessary for Wharton to amend his response as the summary judgment will be denied. Wharton's request for counsel will be taken under advisement.

For these reasons, the Court:

(1) **DENIES** Peter Allen Wharton's request for additional time to amend his response to the summary judgment motion [DE 111];

(2) **TAKES UNDER ADVISEMENT** Peter Allen Wharton's request for recruited counsel [DE 111]; and

(3) **DENIES** Dr. Carter's motion for summary judgment [DE 97].

SO ORDERED this 2nd day of May, 2025.

                               s/ John E. Martin  
                               MAGISTRATE JUDGE JOHN E. MARTIN  
                               UNITED STATES DISTRICT COURT

cc:    All counsel of record  
       Plaintiff, *pro se*